**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| SAMIAM GROUP, LLC, | : | |
|            Plaintiff, | : | |
| | : | |
|       v. | : | No. 5:22-cv-2256 |
| | : | |
| COOPERSBURG ASSOCIATES, | : | |
| INC., | : | |
|            Defendant. | : | |

_____

**O P I N I O N**
**Defendant's Motion for Summary Judgment, ECF No. 37 – Granted in part, Denied in part**
**Plaintiff's Motion for Summary Judgment, ECF No. 38 – Granted in part, Denied in part**

Joseph F. Leeson, Jr.                                                                 January 11, 2023
United States District Judge

## I.    INTRODUCTION

Samiam Group, LLC, owns a design patent that covers the design for a drinking vessel shaped like a baseball bat. Samiam calls the commercial embodiment of its design patent THE BEER BAT, and it can be purchased from concession stands at various baseball stadiums, displaying the logos of various professional baseball teams. At the point of sale, THE BEER BAT is filled with liquid, most commonly beer. After the purchaser enjoys their beverage of choice, they can take THE BEER BAT home as a souvenir.

After Samiam started selling THE BEER BAT, Coopersburg Associates, Inc., created its own baseball bat-shaped drinking vessel. Coopersburg's competing product, the BEVERAGE BAT, can also be purchased from concession stands at various baseball stadiums and also sports the logos of various professional baseball teams. Coopersburg applied for a patent covering the design of the BEVERAGE BAT and received a notice of allowance for its application.

Samiam sued Coopersburg, claiming that the BEVERAGE BAT infringes its design patent for THE BEER BAT and that Coopersburg's business practices amounted to unfair competition. Coopersburg filed a counterclaim, arguing that Samiam's patent covering the design of THE BEER BAT is invalid. The parties then filed cross motions for summary judgment.

The Court denies in part and grants in part both parties' motions for summary judgment. Samiam's design patent is valid because design patents are presumed valid, and Coopersburg failed to present clear and convincing evidence to rebut that presumption. There is, however, a genuine dispute of material fact as to whether the BEVERAGE BAT infringes Samiam's design patent because a reasonable jury could find that the two designs are not substantially the same. Finally, summary judgment is awarded in favor of Coopersburg and against Samiam on the unfair competition claim because it is pre-empted by federal patent law.

## II.    BACKGROUND

### a.  *Undisputed Facts*

#### *Samiam and THE BEER BAT*

Samiam Group, LLC, is a Connecticut limited liability company, and it sells a baseball bat-shaped drinking vessel called THE BEER BAT. Samiam is also the owner of Design Patent No. 888,498 (the '498 patent), which was issued by the United States Patent and Trademark Office (USPTO) on June 30, 2020. The '498 patent covers an "ornamental design for a drinking vessel" that is shaped like a baseball bat, as it is depicted in the drawings below. *See* Samiam MSJ, Ex. 4.



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

FIG. 8

When considering Samiam's application for the '498 patent, the USPTO referenced several previously patented baseball bats and also several other previously patented baseball bat-shaped drinking vessels. *See* Coopersburg MSJ, Ex. Z. Two of those references were to baseball bat-shaped drinking vessels: Design Patent No. 809,867 (the '867 patent) and Design Patent No. 419,379 (the '379 patent), which are pictured below.



D809,867    D419,379

The USPTO determined that the '498 patent and the '867 patent both have proportions that are very close to that of an actual baseball bat. *Id.* It also determined, however, that when comparing

the '498 patent and the '867 patent "side-by-side, the appearances of the two are quite different." *Id.* It also determined that the '379 patent differed "significantly from" the '498 patent. *Id.*

In addition to a design patent, Samiam also applied for a trademark for "The Beer Bat". *See* Coopersburg MSJ, Ex. D. The USPTO rejected that application because "the applied-for mark merely describe[d] features of applicant's goods." *Id.* The USPTO also noted that the term "The Beer Bat" was "merely descriptive" and was "generic in connection with the identified goods and, therefore, incapable of functioning as a source-identifier for applicant's goods." *Id.*

Samiam then applied for, and received, a trademark of THE BEER BAT's logo. *See* Coopersburg MSJ, Ex. E (Beer Bat Trademark). The Beer Bat Trademark states that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown." *Id.* The registered trademark is shown below.



Samiam's Registered Trademark

*Coopersburg and the BEVERAGE BAT*

Coopersburg Associates, Inc., is a Pennsylvania corporation that sells novelty products, including a baseball bat-shaped drinking vessel under the name BEVERAGE BAT. A hollow baseball bat was the starting point for the design of the BEVERAGE BAT. Coopersburg applied for a design patent for the BEVERAGE BAT, and the USPTO issued a notice of allowance for U.S. Patent Application No. 29/814,646 (the '646 patent). *See* Coopersburg MSJ, Ex. AA ('646

Allowance). The '646 Allowance states that the '646 patent is for a beverage container, as depicted in the images below.



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

FIG. 8

When considering Coopersburg's application for the '646 patent, the USPTO referenced the '498 patent as prior art. Nevertheless, the '646 patent was deemed allowable over the prior art of record, including the '498 patent, meaning that the USPTO concluded that the '646 patent was neither anticipated by nor obvious over the '498 patent.

Samiam notified Coopersurg on May 28, 2021, that it believed the BEVERAGE BAT infringed the '498 patent. Samiam sent Coopersburg a second notice on April 20, 2022. Coopersburg ordered 310,000 units of the BEVERAGE BAT from its supplier between February 2020 and October 2022. The commercialized product Coopersburg sells to consumers as the BEVERAGE BAT is pictured below.



### b. Procedural History

Samiam filed suit against Coopersburg, bringing two claims: i) direct infringement of the

'498 patent and ii) common law unfair competition. According to Samiam, the BEVERAGE BAT

infringes the ornamental design covered by the '498 patent. Samiam also argues that Coopersburg

engaged in unfair competition by deceptively marketing the BEVERAGE BAT in a way that is

likely to cause confusion as to its source.

In response, Coopersburg filed an Amended Answer and Counterclaim, in which Coopersburg raised the affirmative defense that the '498 patent is invalid and a counterclaim arguing the same. Before the Court now are the parties' cross motions for summary judgment.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

IV.    **ANALYSIS**

In Samiam's motion for summary judgment, it argues that the '498 patent is valid, that the

BEVERAGE BAT infringes that patent, and that Coopersburg has engaged in unfair competition.

Samiam also argues that it is entitled to compensatory damages, injunctive relief, and enhanced

damages and attorney fees based on Coopersburg's alleged misconduct. Coopersburg opposes and

argues in its motion for summary judgment that the BEVERAGE BAT does not infringe on the

'498 patent and that Samiam's unfair competition claim is pre-empted by federal law. In

adjudicating the parties' cross motions for summary judgment, the Court must address whether any

genuine disputes as to any material facts exist for several questions.

Is the '498 patent valid? If so, then is it infringed by the BEVERAGE BAT? Do

Coopersburg's business practices amount to unfair competition? And if the BEVERAGE BAT

infringes the '498 patent, or if Coopersburg has engaged in unfair competition, then what relief is

Samiam entitled to? The Court addresses whether there are genuine disputes as to any material facts

for each of those questions in turn.

     *a.    The '498 patent is valid.*

"Design patents are presumed valid." *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379,

1383 (Fed. Cir. 2020). Thus, a party seeking to invalidate a design patent carries the burden to

"submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury

could find otherwise." *Id*. A design patent may be invalidated if the claimed design is anticipated by

prior art or is obvious in light of prior art. *See* 35 U.S.C. §§ 102–03. Prior art is "analogous art" that

is "from the same field of endeavor" as the claimed design or is "reasonably pertinent to the

particular problem with which the inventor is involved." *Wonderland NurseryGoods Co. v. Thorley*

*Indus., LLC*, 988 F. Supp. 2d 479, 496 (W.D. Pa. 2013) (quoting *K–TEC, Inc. v. Vita–Mix Corp.*,

696 F.3d 1364, 1375 (Fed. Cir. 2012)). Prior art "anticipates" a claimed design when "a single prior

art reference is 'identical in all material respects' to the claimed invention." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015) (quoting *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001)). A claimed design is obvious in light of prior art if the claimed design "as a whole would have been obvious before the effective filing date of the claimed [design] to a person having ordinary skill in the art to which the claimed [design] pertains." 35 U.S.C. § 103. When analyzing whether a claimed design is obvious in light of prior art, courts consider "(1) the scope and content of prior art; (2) differences between prior art and claims; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness." *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir. 2014).

Samiam argues that it is entitled to summary judgment that the '498 patent is valid because Coopersburg has failed to produce clear and convincing evidence of facts underlying invalidity of the '498 patent. Coopersburg argues that there are genuine issues of material fact of whether the claimed design in the '498 patent is invalid due to anticipation or being obvious in light of prior art. The Court agrees with Samiam.

Coopersburg first points to numerous design patents for actual baseball bats, arguing that the claimed design in the '498 patent is obvious in light of those designs. There is no doubt that the overall look of the claimed design in the '498 patent is strikingly similar to the design of many previously patented baseball bats, such as the Easton Pro Stix Bat, the Franklin Sports Youth Baseball Bat, and the Louisville Slugger C271 Replica Bat pictured below.



Easton Pro Stix Bat     Franklin Sports Youth Baseball Bat     Louisville Slugger C271 Replica Bat     FIG. 2     '498 Patent

Even Samiam acknowledges that the "overall and dominating feature of Samiam's drinking vessel design is that it looks like an upright baseball bat." Samiam MSJ 12. However, baseball bats do not qualify as prior art for the '498 patent because they do not come from the same field of endeavor.

A baseball bat belongs to the field of sporting and recreational play of hitting a ball. The '498 patent belongs to the field of consuming beverages. Both may be found at an actual baseball field, but that does not put them in the same field of endeavor for purposes of a prior art analysis. Nor are baseball bats and the '498 patent pertinent with a particular problem; the goal of a baseball bat is to hit a ball. Though the '498 patent could be used to hit a ball, its true purpose is to hold liquid for drinking; to put it plainly, the '498 patent is a design for a cup. Despite Coopersburg's argument, a baseball bat cannot be prior art for a cup.

Coopersburg next points to several other baseball bat-shaped drinking vessels and argues that they are prior art that make the '498 patent obvious. Specifically, the Dugout Mug, the '867 patent, the '379 patent, and the Baseball Decanter Set, which are pictured below.



Dugout Mug



'867 patent



'379 patent



Baseball Decanter Set

The Court agrees with Coopersburg that these examples qualify as prior art because each of them, like the '498 patent, are meant to resemble a baseball bat and are all in the same field of endeavor and are reasonably pertinent to a particular problem; that is, they all belong to the field of consuming beverages and all of them are meant to hold liquid for drinking.

Samiam argues that "there is no applicable 'prior art' to be considered in this case at all." Samiam MSJ 13. It points out that the USPTO did not label any references it considered when reviewing the '498 patent application as "prior art." It also argues that the patented design is "completely different" from the other baseball bat-shaped drinking vessels referenced by the USPTO. *See* Samiam Reply 4. However, the fact that the '498 patent is different enough from the other referenced baseball bat-shaped drinking vessels to be issued a patent does not mean that those references are not prior art per se. Nor does it mean that the cited references cannot be considered prior art simply because the USPTO did not specifically label them as "prior art."

The question is not whether the USPTO labeled the cited references as "prior art"; the question is whether the reference logically would have commended itself to the attention of a designer of ordinary skill who designs articles of the type involved in considering their problem. *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1375 (Fed. Cir. 2012). If it would, then the reference can qualify as prior art because it is reasonably pertinent to the particular problem the designer is involved with. *See id*.

In this case, the problem or goal of the designer of the '498 patent was to design a drinking vessel that resembled a baseball bat. The designers of the Dugout Mug, the Baseball Decanter Set, and the '867 and '379 patents had the same problem or goal—to design a drinking vessel that resembled a baseball bat. Any designer of ordinary skill that intended to design a baseball bat-shaped drinking vessel would consider other drinking vessels also shaped like baseball bats. *See In re Bigio*, 381 F.3d 1320, 1326 (Fed. Cir. 2004) (explaining that an inventor of ordinary skill

working in the field of hairbrushes would consider all similar brushes including toothbrushes). As a result, the Dugout Mug, the Baseball Decanter, the '867 patent, the '379 patent, and any other baseball bat-shaped drinking vessel that predates the '498 patent, could qualify as prior art. However, just because they qualify as prior art does not mean that the '498 patent is invalid.

Indeed, the USPTO issued the '498 patent fully aware of the '867 and '379 patents. This Court gives deference to the USPTO's determination that the '498 patent is valid because the USPTO "is presumed to have properly done its job." *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (quoting *PowerOasis, Inc. v. T–Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008). The Court must also assume that the examiners from the USPTO who issued the '498 patent "have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Shire LLC*, 802 F.3d at 1307 (quoting *PowerOasis, Inc.*, 522 F.3d at 1304). Coopersburg has not met its heightened burden of overcoming that deference because it does not offer a persuasive argument of why the USPTO was wrong to issue the '498 patent after the examiner considered the '867 and '379 patents. *See id*.

The additional references that Coopersburg points to—the Dugout Mug and the Baseball Decanter Set—are no more similar to the '498 patent than the '867 and '379 patents. Comparing them side-by-side to the '498 patent, their appearances are quite different.





Baseball Decanter Set



FIG. 1

Dugout Mug

'498 patent

The Dugout Mug is significantly shorter than the '498 patent and has a differently shaped knob[1] at its base. The Baseball Decanter Set is closer to the claimed design of the '498 patent, but it has its differences: it is transparent; liquid is poured out of its knob instead of its top; and it is designed to be stored horizontally. Those differences are enough that they do not anticipate the '498 patent or make the '498 patent obvious.

In sum, Coopersburg has failed to submit clear and convincing evidence to overcome the presumption that the '498 patent is valid. No reasonable jury could find otherwise. As a result, Samiam is entitled to summary judgment that the '498 patent is valid.

---

[1]     Throughout this Opinion, the Court uses the term "knob" to refer to the portion of a design that is meant to resemble the bottom part of a baseball bat's handle.

### b. *A genuine dispute of material fact exists as to whether the BEVERAGE BAT infringes the '498 patent.*

A design patent claims "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. Unlike a utility patent, which generally includes substantial details about a claimed invention, a design patent often includes little more than drawings of the claimed design. Thus, a design patent is limited to the design shown in the application drawings and has almost no scope. *Pro-Troll Inc. v. Proking Spoon LLC*, No. 20CV01576ECTLIB, 2021 WL 5989942, at *2 (D. Minn. Dec. 17, 2021). The scope includes only novel, ornamental features of the design, not any functional elements. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Design patent infringement is a question of fact, and the burden of proof is on the patentee. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

A party infringes a design patent when they, without authority from the owner, (1) apply the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sell or expose any article of manufacture to which such design or colorable imitation has been applied. 35 U.S.C. § 289. "Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

#### i. Step One—Claim Construction

Claim construction is a matter of law for the court to determine. No. 20CV01576ECTLIB, 2021 WL 5989942, at *3. Rather than construe a design patent claim via a detailed description, it is better to let the application illustrations set the scope of the claim. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). In this case, the scope of the '498 patent claim is for a design of a baseball bat-shaped drinking vessel as it is depicted in the application illustrations. *See* images of claimed design *supra* IIa.

18

### ii.  Step Two—Ordinary Observer Test

In step two, the fact finder compares the patented design to the accused product. This step is more complicated and requires the application of an additional test—the ordinary observer test. This test asks whether an ordinary observer who gives "such attention as a purchaser usually gives" would find that the patented design and the accused product "are substantially the same." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). The accused product infringes the patented design if its resemblance to the patented design deceives the ordinary observer into purchasing the accused product "supposing it to be the other." *Id*.

The patentee must first show that the accused product and the claimed design are not "sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. The comparison is generally between the accused product and the patented design, not a commercial embodiment of the patented design. *Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015). Though a fact finder should consider all the ornamental differences between the accused product and the patented design, minor differences between the two cannot, on its own, prevent a finding of infringement because the ordinary observer test considers the overall look of the designs. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

If there is prior art for the claimed design, and if the accused product and the claimed design "are not plainly dissimilar, resolution of the question of whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id*. Thus, when the accused product and the claimed design are not plainly dissimilar, and in cases involving prior art, a fact finder must conduct a side-by-side visual analysis of all three—the claimed design, the accused product, and the prior art.

"When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676. When prior art is considered in the analysis, small differences between the accused product and the patented design are more important in "the eye of the hypothetical ordinary observer" then they would be absent the prior art. *Id*.

Applying the ordinary observer test in this case, the Court first looks at a side-by-side comparison of the '498 patent and the accused product, the BEVERAGE BAT:



'498 patent                                    BEVERAGE BAT



**FIG. 6**





**FIG. 7**

'498 patent



BEVERAGE BAT



FIG. 8

'498 patent                                    BEVERAGE BAT

Coopersburg argues that the BEVERAGE BAT and the '498 patent are plainly dissimilar,
highlighting, among other things, the rounded bumps on the BEVERAGE BAT's handle. Samiam
argues that the two are "virtually identical" in appearance because the "overall and dominating
feature" of both designs is that they look "like an upright baseball bat." Samiam MSJ 12. Samiam
also argues that Coopersburg "has failed to demonstrate that the ordinary purchaser of its baseball
bat-shaped drinking vessel would *not* conclude that its design is substantially the same as Samiam's
patented baseball bat-shaped drinking vessel design." Samiam Resp. 15.

That argument flips the burden of proof on its head; it is Samiam's burden to prove that the
two are substantially similar to an ordinary observer. Moreover, the fact that both look like an

upright baseball bat does not establish infringement per se because "[s]uch high level similarities . . . are not sufficient to demonstrate infringement." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015). By observing the patented design and the accused product side-by-side, the Court determines that there are at least seven differences between the two that an ordinary observer could notice.

First, the BEVERAGE BAT has rounded bumps along its handle that create a rough appearance. In contrast, the patented design's handle is smooth.

Second, the BEVERAGE BAT's handle does not flare outwards as it extends into the knob at its base. This creates a more abrupt transition from the handle to the knob than the patented design, which flares out as it extends into the knob, creating a smooth transition.

Third, the BEVERAGE BAT has visual transitions where its barrel tapers into its thinner handle. These transitions are admittedly difficult to see in the photo above based on the quality of the photo, but Coopersburg supplied the Court with a physical exhibit of the BEVERAGE BAT, which the Court has inspected, and the Court determines that these transitions would be noticeable to the ordinary observer. In contrast, the patented design is not segmented and is smooth from its top to its knob.

Fourth, the top section of the BEVERAGE BAT is cylindrical in shape, whereas the patented design gradually flares outward along its entire length.

Fifth, the BEVERAGE BAT includes two embossed logos on its barrel: one states "BeverageBat™", and the other is a circle encasing the letters "CS". Again, these are difficult to see based on the quality of the photo but can be seen in person. The patented design is smooth and free from any embossed logos.

Sixth, the underside of the BEVERAGE BAT's knob has a sticker of Coopersburg's logo. The underside of the patented design's knob is plain. Of course, an accused product can still

infringe a patented design even if it contains branding and logos that are distinct from the patented design, but a fact finder may consider "an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1131 (Fed. Cir. 2019). Samiam takes issue with this difference, arguing that the sticker of the Coopersburg logo could not be seen by the ordinary observer at the time of purchase based on its placement. However, the application of the ordinary observer test is not limited to what the accused product looks like at the time of sale. Instead, the ordinary observer comparison extends to all ornamental features visible during normal use of the product. *Contessa Food Prod., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665. In other words, the entire life cycle of the accused product is germane to an analysis of patent infringement. In the case at hand, the ordinary observer might purchase the BEVERAGE BAT, drink its contents, and then take it home as a souvenir. The ordinary observer could view the underside of the knob of the BEVERAGE BAT and see the sticker at various points in that process; they might turn it over and see the sticker after drinking its contents; they might display it at home and see the sticker then; they could even hold it upright while it contains liquid, lift it up, and peer underneath to see the sticker. Thus, the sticker is not irrelevant in an infringement analysis.

Seventh, the BEVERAGE BAT is completely hollow; the patented design's knob and lower portion of its handle are solid. Though the ordinary observer might not be able to tell that the BEVERAGE BAT is hollow at the time of purchase, they could discover that it is hollow by peering down the barrel once it is emptied of its contents.

Samiam argues that these differences are insignificant and cautions the Court that focusing on these "trivial" differences "would be procedural error." Samiam Resp. 14. To the contrary, it would be an error to ignore these differences because a fact finder must consider the overall designs

of the accused product and the patented design. To be clear, the Court does not view each ornamental feature in isolation. *See Columbia Sportswear*, 942 F.3d at 1131 (holding that "the ordinary observer is deceived by an infringing design as a result of similarities in the overall design, not of similarities in ornamental features considered in isolation" (cleaned up)). Instead, it considers each ornamental design of the BEVERAGE BAT and how, together, they affect the overall design as a whole.

When viewing the facts in a light most favorable to Coopersburg, a reasonable jury could find that the '498 patent and the BEVERAGE BAT are sufficiently distinct. Even if a reasonable jury did determine that the two are substantially the same, that jury would next have to consider the two designs alongside the prior art; and when viewing the facts in a light most favorable to Coopersburg, a reasonable jury could find noninfringement when the two are considered alongside the prior art. As a result, Samiam's request for summary judgment on this issue is denied.

The Court, however, also denies Coopersburg's request for summary judgment on this issue because, when the facts are viewed in a light most favorable to Samiam, a reasonable jury could find that the two designs are substantially the same even alongside the prior art. Indeed, an accused product does not need to be identical to a patented design to infringe, and a reasonable jury could find that the BEVERAGE BAT's overall design infringes the '498 patent despite its differences.[2]

In sum, there is a genuine dispute as to material facts of whether the BEVERAGE BAT infringes the '498 patent. This issue must therefore go to the jury.

---

[2]       Coopersburg also argues that it is entitled to summary judgment on this issue because the USPTO issued the '646 Allowance. However, the '646 Allowance does not preclude a finding of patent infringement per se. *See Koninklijke Philips N.V. v. IdeaVillage Prod. Corp.*, No. 2:21-CV-08706-KM-ESK, 2021 WL 4438185, at *7 n.6 (D.N.J. Sept. 27, 2021).

### c.  *Samiam's unfair competition claim is pre-empted.*

"[T]he contours of Pennsylvania unfair competition law are not entirely clear." *Checker Cab*

*Phila., Inc. v. Uber Techs., Inc.*, 689 F. App'x 707, 709 (3d Cir. 2017). "But all unfair competition

claims recognized by Pennsylvania courts involve some accusation of 'passing off' of one's own

product as another, or a false or dishonest statement, or tortious interference with contract, or

intellectual property theft." *Id.* at 710. The parties both cite to the same case and assert that a party

is liable for unfair competition if (1) it engages in deceptive marketing, infringement of trade

secrets, or acts or practices that are actionable under federal or state statutes and (2) its conduct

causes harm to the plaintiff's commercial relations. *See SJ Abstract v. Old Republic Nat'l Title Ins.*

*Co.*, No. CV 21-1334, 2021 WL 4847803, at *8 (E.D. Pa. Oct. 14, 2021).

Coopersburg argues that Samiam's unfair competition claim is pre-empted by federal patent

law. "The Supremacy Clause preempts state law by means of express preemption, field preemption,

or conflict preemption." *Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1326 (Fed. Cir. 2017).

Express pre-emption is exactly what it sounds like; that is, state law is expressly pre-empted

by federal law. Here, Samiam's unfair competition claim is not expressly pre-empted by federal

patent law because federal patent law does not provide for explicit pre-emption. *See CardioVention,*

*Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 939 (D. Minn. 2006).

Under field pre-emption, state law is pre-empted in fields that are occupied exclusively by

the Federal Government. *Id.* Samiam's unfair competition claim is not pre-empted under field pre-

emption because "Congress does not intend to occupy exclusively the field of unjust enrichment

law." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005).

Under conflict pre-emption, courts take an "as-applied" approach, "focusing on the conduct

that forms the basis for the tort law claim." *Id.* Conflict pre-emption applies "when state law stands

as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262 (1979) (cleaned up). Claims of unfair competition are not always in conflict with federal patent law because "the regulation of business affairs is traditionally a matter for state regulation." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1334 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999)).

However, "[i]f a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Id.* Thus, an unfair competition claim is pre-empted by federal patent law if it is based on the same conduct that is governed by patent law. *See Medtronic, Inc.*, 430 F. Supp. 2d 933, 939 (holding that "a tortious interference claim is preempted by federal patent law if it is based on the same conduct that is governed by patent law").

In this case, Coopersburg argues that federal patent law pre-empts Samiam's unfair competition claim because Samiam's claims of unfair competition and patent infringement are based on the same conduct. Samiam argues that its unfair competition claim is not pre-empted because it "incorporates other elements outside the scope of patent law." Samiam Resp. 29. According to Samiam, it has produced "ample evidence that would enable a jury to hold [Coopersburg] liable for unfair competition" in addition to evidence showing patent infringement.

For example, Samiam argues that the name "Beverage Bat" is confusingly similar to the name of its product—"The Beer Bat." It also points out examples of consumers referring to the BEVERAGE BAT as a "beer bat" on social media. Coopersburg does not dispute that the BEVERAGE BAT has been referred to as a "beer bat" by some consumers. But Samiam has not produced any evidence that Coopersburg intentionally marketed its product using the term "beer bat." Even if Coopersburg had used the term "beer bat" in its marketing or advertising, the USPTO rejected Samiam's application for a trademark over the mark "The Beer Bat." Indeed, Samiam

acknowledges that it "has not sued [Coopersburg] for trademark infringement." Samiam Resp. 29.

Instead, Samiam brought the unfair competition claim, but federal law pre-empts state law that

offers trademark-like protection to marks unprotected by federal trademark law. *Cf. Ultra-*

*Precision.*, 411 F.3d at 1377–78. It would be a different story if Coopersburg had used Samiam's

trademarked logo, but the only evidence that Samiam has produced here is that some consumers

referred to the BEVERAGE BAT using the term "beer bat," which is not evidence of unfair

competition. The Court agrees with Coopersburg that "[s]uch confusion is the inevitable

consequence of Samiam's choice to use a generic name for its product, not deceptive marketing on

the part of Coopersburg." Coopersburg MSJ 29.

Next, Samiam asserts that Coopersburg markets and sells the BEVERAGE BAT "to

essentially the same customers and end users through essentially the same channels of trade, thereby

harming [Samiam's] commercial relations." Samiam Resp. 29. Those practices certainly amount to

competition, but they do not rise to the level of unfair competition. Indeed, there is nothing

deceptive on its own about Coopersburg's practice of selling the BEVERAGE BAT to fans at

baseball games.

The only evidence of unfair competition that remains is Samiam's evidence of potential

patent infringement. As a result, it is pre-empted by federal patent law, and Coopersburg is entitled

to summary judgment in its favor on this claim.

### d. *A genuine dispute of material fact exists as to what relief Samiam is entitled to, if any.*

Since the Court has determined that a genuine dispute of material fact exists as to whether

the BEVERAGE BAT infringes the '498 patent and awards summary judgment in favor of

Coopersburg for the unfair competition claim, it follows logically that a genuine dispute of material

fact exists as to whether Samiam is entitled to relief, and, if so, to what kind of relief.

## V.    CONCLUSION

The '498 patent is valid because Coopersburg failed to produce clear and convincing evidence to rebut the presumption of its validity. A genuine dispute of material fact exists as to whether the BEVERAGE BAT infringes the '498 patent, especially in light of the prior art, because a reasonable jury could find infringement or noninfringement. Samiam's claim of unfair competition is pre-empted by federal patent law because, other than evidence of potential patent infringement, Samiam failed to produce any evidence of unfair competition. Since the Court did not determine liability at the summary judgment stage, it is not possible to determine what relief, if any, Samiam is entitled to. For those reasons, and for the reasons above, the parties' cross motions for summary judgment are both denied in part and granted in part.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*  _____
JOSEPH F. LEESON, JR.
United States District Judge